UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

RICHARD GUERRERO,

               Plaintiff,                12 Civ. 2916

    -against-                        OPINION

CITY OF NEW YORK and DOES 1-10,

               Defendants.

------------------------------------X

A P P E A R A N C E S:

      Attorney for Plaintiff

      LAW OFFICE OF JOHN M. LAMBROS
      The Trump Building
      40 Wall Street, Suite 2809
      New York, NY  10005
      By:  John M. Lambros, Esq.

      Attorneys for Defendant

      MICHAEL A. CARDOZO
      CORPORATION COUNSEL OF THE CITY OF NEW YORK
      100 Church Street
      New York, NY  10007
      By:  Uriel Abt, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/25/13

**Sweet, D.J.**

The defendant City of New York ("City" or "Defendant") has moved to dismiss the Amended Complaint ("AC") of plaintiff Richard Guerrero ("Guerrero" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) ("12(b)(6)"). Upon the conclusions set forth below, the City's motion is granted and the AC is dismissed with leave granted to replead within twenty days.

**Prior Proceedings**

On April 4, 2012, Guerrero filed the instant lawsuit against the City of New York alleging various state and federal claims arising out of an arrest that occurred on December 10, 2010.  On July 23, 2012, Guerrero filed the AC.

As alleged in the AC, on December 10, 2010, Guerrero was involved in an altercation at a night club.  AC ¶ 9.  The other individuals involved in the altercation threatened to call the police, and subsequently did so.  Id.  The police arrived and arrested Guerrero (referred to hereinafter as the "First

1

Arrest"). <u>Id.</u>  After about a year, the criminal charges against Guerrero stemming from the First Arrest were dismissed. <u>Id.</u>

On July 25, 2011, Guerrero was arrested by two plainclothes police officers as he was leaving Queens Court, where he had appeared in an unrelated matter (referred to hereinafter as the "Second Arrest" and, collectively with the First Arrest, the "Arrests"). <u>Id.</u> ¶ 11.  One of the arresting officers informed Guerrero that his arrest was due to a complaint made by an N.Y.P.D. traffic agent, who accused Guerrero and two other individuals of assaulting him or her at 5:30 A.M. on July 22, 2011. <u>Id.</u>  Guerrero contends that he was in the hospital at that time. <u>Id.</u>  The criminal charges against Guerrero stemming from the Second Arrest were eventually dismissed. <u>Id.</u>

**The Rule 12(b)(6) Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." County of Suffolk, New York v. First Am. Real Estate Solutions, 261 F.3d 179, 187 (2d Cir. 2001) (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Guerrero's § 1983 Claim Is Dismissed**

Guerrero asserts a claim under 42 U.S.C. § 1983 ("§ 1983") against the City based upon alleged constitutional violations committed by the police officers who were involved with the Arrests.  However, Guerrero has failed to allege a

3

viable basis for the City's liability under § 1983, and has likewise failed to allege any underlying constitutional violations.  Accordingly, Guerrero fails to state a § 1983 claim against the City.

A.  *Guerrero Fails to Allege Facts Providing a Viable Basis for* Monell *Liability*

A municipality can only be held liable under 42 U.S.C. § 1983 in the manner set forth in <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), and its progeny, and may not be held liable under § 1983 on a theory of *respondeat superior.* <u>Nagle v. Marron</u>, 663 F.3d 100, 116 (2d Cir. 2011).

In order to prevail on a § 1983 claim against a municipality, a plaintiff must show that the municipality itself caused the alleged constitutional deprivation.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  Guerrero must therefore establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." <u>Monell</u>, 436 U.S. at 694.  Accordingly, in order to state a <u>Monell</u> claim, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . .

4

Second, the plaintiff must establish a casual connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied 480 U.S. 916 (1987) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985)).

A municipal policy or custom for purposes of Monell liability can be established by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Bennerson v. City of New York, No. 03 Civ. 10182, 2004 WL 902166 724l, at *4 (S.D.N.Y. Apr. 28, 2004) (internal citations omitted).

At the pleading stage, the "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.2d 674, 685 (2d Cir. 1995); see also Brodeur v. City of New York, No. 99 Civ. 651 (WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) (dismissing complaint against City that "flatly asserts" the existence of a policy but contains no "factual allegations sufficient to establish that a municipal policy or custom cased [plaintiff]'s alleged injury"). Indeed, while "[i]t is questionable whether the boilerplate Monell claim often included in many § 1983 cases . . . was ever sufficient to state a claim upon which relief could be granted[,] [i]n light of [Iqbal and Twombly, supra], it is now clear that such boilerplate claims do not rise to the level of plausibility" required to state a viable Monell claim. Santiago v. City of New York, No. 09 Civ. 0856 (BMC), 2009 WL 2734667, at *3 (E.D.N.Y. Aug. 25, 2009).

The AC contains only boilerplate assertions of a municipal policy or custom, see AC ¶¶ 14-15, 17-18, alleging that "Plaintiff was injured by defendants because their acts were perpetrated based on custom, usage, patterns, and policies

6

instituted by the municipal policymakers and resulting in violations of Plaintiff's civil rights," id. ¶ 15, without offering any accompanying factual support.  As set forth above, such conclusory allegations are insufficient to state a claim for Monell liability.

Moreover, the two Arrests of which Guerrero complains do not, in and of themselves, suffice to state a municipal policy or custom. Giaccio, 502 F. Supp.2d at 389.  Each arrest is factually distinct from the other, and Guerrero fails to establish any common causal thread between the two that would support a theory of Monell liability.  Guerrero has not alleged what municipal policy or custom he believes led to his arrests, and has failed to set forth which of the four theories of Monell liability is the basis for the City's liability.

Accordingly, the AC does not allege facts that sufficient to make out Monell claim against the City of New York under any theory of liability.[1]

_____

[1] In an apparent effort to state a Monell claim under the failure-to-train prong set forth in City of Canton v. Harris, 489 U.S. 378 (1989), the AC refers to a newspaper article (the "Article") that suggests that NYPD does not keep statistics on lawsuits in which it is a defendant.  AC at ¶ 17.  However, no inference can be drawn from the Article with respect NYPD training policies, and the Article certainly does not establish

*B.  Guerrero Fails to Allege an Underlying Violation*

"Monell does not provide a separate cause of action
for the failure by the government to train its employees;
it *extends* liability to a municipal organization where that
organization's failure to train, or the policies or customs that
it has sanctioned, led to an independent constitutional
violation." Segal v. City of New York, 459 F.3d 207, 219 (2d
Cir. 2006).  Accordingly, in order for Guerrero to state a
viable § 1983 claim, he must allege an underlying violation that
"deprived [him] of rights, privileges or immunities secured by
the Constitution or laws of the United States." Pritchell v.
Callan, 13 F.3d 545, 547 (2d Cir. 1994).

To satisfy this pleading requirement, Guerrero
alleges violation of his Fourth Amendment rights due to false
arrest and use of excessive force.  AC ¶¶ 9-11, 19-20.  However,

---

the requisite "affirmative link" between the issues it discusses
and the circumstances of Plaintiff's arrests. See Tuttle, 471
U.S. at 823 ("At the very least there must be an affirmative
link between the policy and the particular constitutional
violation alleged.").  Accordingly, to the extent that Guerrero
seeks to assert a failure-to-train Monell claim based upon the
Article, such a claim is unavailing.

Guerrero fails to adequately plead any type of Fourth Amendment violation.

(i) Guerrero Fails to State a Claim for False Arrest

The elements for a § 1983 claim premised on a false arrest claim are substantially similar to the elements necessary to state a claim for false arrest under New York law.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).  Thus, in order to state a § 1983 claim premised upon a false arrest, a plaintiff must allege that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Weyant, 101 F.3d at 853 (quoting Broughton v. State, 37 N.Y.2d 451, 456 (1975).  An arrest pursuant to probable cause is privileged; thus, the existence of probable cause is a complete defense to an action for false arrest under either state law or § 1983.  Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).

In addition, when a victim complains to the police that a crime has been committed, probable cause to arrest an

9

identified perpetrator exists absent a reason to doubt the complaining victim. <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995).

In cases where a plaintiff attempts to plead false arrest despite the existence of a complaining victim or witness, the plaintiff must, at the very least, allege facts tending to show that the victim's veracity should have been questioned. See, e.g., <u>Khaja-Moinuddin v. City of New York</u>, No. 09 Civ. 646 (CBA), 2010 WL 3861003, at *5-6 (Sept. 28, 2010).

Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." <u>Ricciuti</u>, 124 F.3d at 128. This is because, "[i]t is up to the fact finder to determine whether a defendant's story holds water, not the arresting officer." <u>Krause v. Bennett</u>, 887 F.2d 362, 372 (2d Cir. 1989). Thus, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." <u>Bernard v. United States</u>, 25 F.3d 98, 103 (2d Cir. 1994).

10

Here, Guerrero has alleged that he was arrested due to the complaints of victims or witnesses.  With regard to the First Arrest, Guerrero contends that the police were called by either the individuals with whom he had an altercation or by witnesses to that altercation.  See AC ¶ 9; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) ("Pl. Mem. Opp.") at 2-3.  With regard to the Second Arrest, Guerrero alleged that he was arrested based on the accusations of the traffic agent who was purportedly the victim of the assault.  AC ¶ 11.  Moreover, Guerrero has made no allegation—with regard to *either* arrest—that the arresting officers had reason to doubt the complaints leading to the Arrests.[2]  Accordingly, even if Guerrero's allegations are

---

[2] Though Guerrero contends in the AC that he could not have committed the assault that precipitated the Second Arrest because he was in the hospital at the time of the alleged assault, Guerrero does not allege that he made such a contention to the arresting officers.  See AC ¶ 11.  Accordingly, there is no allegation that the officers who were responsible for the Second Arrest had reason to doubt the criminal complaint that had been made against Guerrero.  It should be noted that even if Guerrero had included such an allegation in the complaint, it would not necessarily mean that the arresting officers did not have probable cause, but rather the inclusion of such an allegation would have simply necessitated an analysis as to whether it was reasonable for the officers to arrest Guerrero despite his claim of being hospitalized at the time of the complained-of assault on the traffic officer.  However, since Guerrero made no such allegation in the AC, the existence of

accepted as true and all inferences are drawn in his favor, it is evident that the officers responsible for both of the Arrests had probable cause to arrest Guerrero, and therefore Guerrero fails to state a viable claim for false arrest.[3]

## (ii) Guerrero Fails to State a Claim for Excessive Force

Guerrero has also failed to adequately allege a claim for excessive force. "Not every push or shove amounts to a Fourth Amendment violation. Indeed, a de minimus use of force will rarely suffice to state a Constitutional claim. Further, a plaintiff must allege that he sustained an injury to maintain an excessive force claim." Acosta v. City of New York, No. 11 Civ. 856 (KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (quotations and citations omitted) (dismissing excessive force claim where plaintiff alleged that he was punched in the chest and thrown on the ground but did not allege any injury).

---

probable cause can be assumed without delving into such an analysis.

[3] In addition, to the extent that Guerrero is basing his § 1983 claim on an allegedly unreasonable search, see AC ¶ 9, this claim fails as well, because a search incident to a lawful arrest is per se reasonable. Arizona v. Gant, 556 U.S. 332, 338 (2009).

With respect to the First Arrest, Guerrero alleged that his handcuffs were too tight. AC ¶ 9. Such an allegation alone does not state a claim for excessive force. See, e.g., Wims v. New York City Police Dept., No. 10 Civ. 6128 (PKC), 2011 WL 2946369 at *5 ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."); Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (allegation of tight handcuffs resulting in twenty-four hours of wrist inflammation and soreness does not rise to the level of excessive force).

With respect to the Second Arrest, Guerrero alleged that he was "physically abused," that the officers "threw him around like a toy," and that he was thrown into the back of a police vehicle. AC ¶ 11. However, Guerrero alleged no injury stemming from these acts other than claiming to have "suffered mental and emotional harm." AC ¶ 32. Such a conclusory assertion, unaccompanied by allegations of a specific or identifiable mental injury, is an insufficient basis for an excessive force claim. Wims, 2011 WL 2943639, at *5.

13

**Guerrero's State Law Claims Are Dismissed**

New York General Municipal Law 50-i(1) mandates that

> [n]o action or special proceeding shall be prosecuted or maintained against a city . . . unless, (a) a notice of claim shall have been made and served upon the city . . . in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

N.Y. Gen. Mun. L. 50-i(1) ("Rule 50-i(1)").  In addition, the required notice of claim must be filed within ninety days after the claim arises.  N.Y. Gen. Mun. L. 50-e(1)(a).  "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement."  Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).  In addition, "[t]he appropriate remedy for failure by the plaintiff to comply with [the] [sic] statutory notice of claim requirement is dismissal of the action, even if the claim is meritorious."  Faruki v. City of New York, No. 10 Civ. 9614 (LAP), 2012 WL 1085533, at *10 (S.D.N.Y. Mar. 30, 2012) (quotation and citation omitted).

14

Guerrero's state law claims against the City suffer from several fatal procedural defects.  First, Guerrero has not alleged that a notice of claim was filed with respect to either Arrest as required by Rule 50-i(1)(a), and moreover has failed to make the allegation required by Rule 50-i(1)(b) that "thirty days have elapsed since the service of [a notice of claim] and that adjustment or payment thereof has been neglected or refused."  Indeed, it does not appear that a notice of claim was ever filed with respect to the First Arrest, so Guerrero is barred from asserting state law claims premised upon events that occurred in connection to that event.  Faruki, 2012 WL 1085533, at *10.  In addition, even if a notice of claim had been filed with respect to Guerrero's state law claims arising from the First Arrest, such claims would nonetheless be time-barred since they were first asserted on April 4, 2012, which will over one year and ninety days after the date of the First Arrest, which is December 10, 2010.  See Rule 50-i(1)(c).

With respect to the Second Arrest, Guerrero does appear to have filed a notice of claim with the City, see Declaration of Uriel B. Abt in Support of Defendant's Motion to

15

Dismiss Pursuant to Rule 12(b)(6), Ex. B,[4] but the filing, which was made on March 2, 2012, came long after the expiration of the 90-day deadline mandated by N.Y. Gen. Mun. L. 50-e(1)(a). Accordingly, Guerrero's state-law claims arising from the Second Arrest are also time-barred pursuant to N.Y. Gen. Mun. L. 50-e.

Guerrero has contended that the notice of claim filed with respect to the Second Arrest was not untimely because it was filed within 90 days of the dismissal of the criminal action stemming from the Second Arrest. Pl. Mem. Opp. at 10. However, the operative date for calculating the 90-day deadline is not the date upon which the charge was dismissed, but rather the date upon which Guerrero was released from custody. See Bennett v. City of New York, 204 A.D.2d 587, 587 (N.Y. App. Div. 1994). Guerrero was released from custody on or about July 25, 2011, AC ¶ 11, so the 90-day deadline for submitting a notice of claim premised upon the Second Arrest expired at the end of October

---

[4]   Although Guerrero did not attach this document to his pleading, notice may nonetheless be taken of it because it is a document "either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." Gray v. City of New York, No. 10 Civ. 3039 (SLT)(CLP), 2012 WL 947802, at *10 (E.D.N.Y. Mar. 20, 2012).

2011, more than four months prior to Guerrero's filing of the notice.[5]

Since Guerrero's state law claims against the City arising from the First and Second Arrests are procedurally defective and untimely, dismissal of those claims is warranted on that basis alone.  Faruki, 2012 WL 108553, at *10.

---

[5] To the extent that Guerrero attempts to plead an assault and battery claim stemming from the Second Arrest, that claim is similarly time-barred.  An assault and battery claim arising from the Second Arrest would have accrued on or about July 25, 2011, which was Guerrero's final day in custody, see Lettis v. U.S. Postal Serv., 39 F. Supp. 2d 181, 204-05 (E.D.N.Y. 1998), meaning that the 90-day period for filing a notice of assault and battery claims stemming from the Second Arrest elapsed in late October 2011.

17

**Conclusion**

Based upon the conclusions set forth above, the City's motion to dismiss is granted and the AC is dismissed with leave to replead within twenty days.

It is so ordered.

New York, NY
February 2( , 2013

_____
ROBERT W. SWEET
U.S.D.J.

18